## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JEFFREY P. CHRISTMAN            :        CIVIL NO. 3:02CV1405 (CFD)

VS.                            :

TROOPER KICK                   :        OCTOBER 31, 2003

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.   FACTS

The plaintiff, a resident of West Haven, Connecticut, brings this action pursuant to
42 U.S.C. § 1983 against the defendant, a Connecticut State Police Trooper.  The plaintiff's
complaint arises out of an incident that occurred on April 10, 2000 while the plaintiff was
operating a motor vehicle on Interstate Highway 95 in Bridgeport, Connecticut, near Exit 26.
The plaintiff was involved in an incident with another motorist (Layman McMahon) which
involved verbal taunting and harassment and culminated when Mr. McMahon's truck struck the
rear bumper of the plaintiff's vehicle.

Following the incident, Mr. McMahon phoned the State Police and defendant Kick was
the State Trooper who responded to the call and conducted an investigation.  The defendant took
statements from both parties involved in the incident and examined the physical evidence from
both vehicles.  Based on his investigation, the defendant determined that both parties were at
fault and charged both individuals with motor vehicle violations.  The plaintiff was charged with
reckless driving in violation of Conn. Gen. Stat. § 14-222 and motorist McMahon was charged
with following too closely in violation of Conn. Gen. Stat. § 14-240.  In his complaint, the

plaintiff alleges that the reckless driving charge was nolled by the Assistant State's Attorney in Bridgeport. He now brings this action, alleging that the defendant falsely arrested him without probable cause. The plaintiff also alleges that he and Mr. McMahon were charged in a disparate manner and therefore, the defendant discriminated against him and deprived him of equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution. The plaintiff seeks unspecified monetary damages.

This Motion for Summary Judgment seeks judgment in favor of the defendant on various grounds. First, regardless of the disposition of the plaintiff's case in criminal court, there is no reasonable debate that the defendant had probable cause to arrest the plaintiff. Accordingly, plaintiff's false arrest claim fails. See Bernard v. United States, 25 F.3d 95, 102 (2d Cir. 1994). Second, even if there is a question as to whether the defendant lacked probable cause to effect the questioned arrest, the defendant would nonetheless be entitled to qualified immunity because it was objectively reasonable to believe that he had probable cause to arrest the plaintiff. Finally, plaintiff's equal protection claim is meritless and should be summarily dismissed.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) requires the entry of Summary Judgment "...if the pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "[T]he mere existence of a factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact." Anderson v. Liberty

conjecture" to overcome a motion for summary judgment.  Knight v. Fire Insurance Company, 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).  The evidence must be presented in a manner consistent with its admissibility at trial.  See First National Bank Co. of Clinton, Ill. v. Insurance Co. of North America, 606 F.2d 760 (7th Cir. (1979) (in ruling on summary judgment motion, the Court properly relied upon documents and exhibits identified by affidavit).  Unsworn statements of the parties, letters addressed to the litigants from third persons, and hearsay which does not fall under one or more exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not be properly considered.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598 2 L.Ed.2d 142 (1970); Beyene v. Coleman Security Service, Inc., 854 F.2d 1179 (9th Cir. 1988); Edward B. Marks Music Corp. v. Stansy Music Corp., 1 F.R.D. 720 (S.D.N.Y. 1941).  Moreover, plaintiff must point to "specific facts showing that there is a genuine issue for trial."  Rule 56(e); Anderson, 477 U.S. at 248; see also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (Party may not rely on conclusory statements or an argument that the affidavits in support of the motion are not credible.).  Plaintiff must also produce evidence to show the existence of every element essential to the case which it bears the burden of proving at trial.  Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987).

## III.    ARGUMENT

### A.    State Police Officer Kick Had Probable Cause To Arrest The Plaintiff

The existence of probable cause is the sole criteria for a lawful arrest under the Fourth Amendment and defeats a claim for false arrest.  See Bernard v. United States, 25 F.3d 98. 102

(2d Cir. 1994) (There can be no federal civil rights claim for false arrest when the arresting officer had probable cause); Thomas v. Culberg, 741 F.Supp. 77, 90 (S.D.N.Y. 1990); see also Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); Fields v. City of South Houston, Texas, 922 F.2d 1183, 1189 (5th Cir. 1991). The validity of a warrantless arrest and, thus, the existence or non-existence of probable cause, is a matter determined by the court according to state law. See United States v. Fisher, 702 F.2d 372, 375, n. 6 (2d Cir. 1983).

Probable cause is established "when the arresting officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993) (quoting Calamia v. City of New York, 879 F.2d 1025, 1032 (2d Cir. 1989)). "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." See Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (citing Hebron v. Touhy, 18 F.3d 421, 422-423 (7th Cir. 1994); Miloslavsky v. AES Engineering Soc., Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir.) cert. denied, 510 U.S. 817, 126 L.Ed. 2d 37, 114 S.Ct. 68 (1993)).

Any determination of whether probable cause to effect a particular arrest existed must be founded upon an analysis of the "totality-of-the-circumstances" surrounding the particular intrusion in question. Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527

(1983).   The information upon which an officer may properly rely in determining whether probable cause to effect a warrantless arrest exists is not limited only to those facts of which he has personal knowledge.   A determination of probable cause may be based on hearsay information from a reliable source or information from an anonymous informant that can be independently corroborated.   See, e.g., Draper v. U.S., 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959).

If reasonable grounds to arrest exist, probable cause is established and there is no further duty to investigate.   Franco-de Jerez v. Burgos, 867 F.2d 1038, 1041 (1st Cir. 1989).   Thus, the fact that the person to be arrested may deny the allegation of wrongdoing is of no significance to the defendants' formulation of probable cause.

> … [There is no requirement] that an officer otherwise equipped
> with probable cause to arrest an individual has a duty to question
> and weigh the suspect's version of the incident prior to making the
> arrest.…   Although police officers must exercise judgment in
> assessing the existence or non-existence of probable cause in a
> given situation, they are not required to arbitrate the matter with
> the suspect.

Baker v. McCollan, 443 U.S. 137, 145-46, 99 S.Ct. 2689, 2695-96, 61 L.Ed.2d 433 (1979); Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997).   Nor are the arresting officer's subjective feelings about the arrest relevant to the issue of whether the contested arrest was supported by probable cause.   An arrest is valid if probable cause to arrest objectively existed, even if the officer subjectively believed that probable cause did not exist, and even if the arresting officer harbored personal ill feelings toward the person arrested.   See Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989); Peters v. New York,

6

392 U.S. 40, 66-67, 88 S.Ct. 1889, 1904-05, 20 L.Ed.2d 917 (1968), cited in favor in Florida v. Royer, 460 U.S. 491, 507, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983). Moreover, probable cause to arrest for *any* offense--even one with which the plaintiff was not ultimately charged--is sufficient to overcome the charge of false arrest or imprisonment. See, e.g., Avery v. King, 110 F.3d 12 (6th Cir. 1997); Biddle v. Martin, 992 F.2d 673 (7th Cir. 1993); Pfannstiel v. City of Marion, 918 F.2d 1178 (5th Cir. 1990).

An analysis of the plaintiff's allegations, along with the uncontroverted facts surrounding this motor vehicle incident of April 10, 2000, leads to the inevitable conclusion that defendant State Police Officer Kick had probable cause to arrest the plaintiff. The defendant responded to a call by motorist McMahon and investigated the motor vehicle incident involving the plaintiff and motorist McMahon. (Trooper Kick Affidavit, para. 4). Pursuant to his investigation, the defendant took statements from the involved parties and examined the pertinent physical evidence. (Trooper Kick Affidavit, para. 4). During this investigation, the plaintiff admitted that he was involved in this motor vehicle "altercation" with motorist McMahon and that while traveling on an Interstate Highway, on several occasions, applied his brakes while motorist McMahon was traveling close behind (Trooper Kick Affidavit, Para. 6). This admission alone is sufficient to support a charge against the plaintiff for reckless driving pursuant to Conn. Gen. Stat. § 14-222.[1] In fact, the defendant cited the plaintiff for the following: "Operator #1 (the

---

[1] Conn. Gen. Stat. § 14-222 provides as follows:

**Sec. 14-222. Reckless driving.** (a) No person shall operate any motor vehicle upon any public highway of the state, or any road of any specially chartered municipal association or of any district organized under the provisions of chapter 105, a purpose of

7

plaintiff) was found at fault for Reckless Driving, braking his vehicle with the vehicle directly behind him traveling too close causing them to collide." (Police Report, 4/10/00 p. 3). Moreover, the statement taken from motorist McMahon incident to the defendant's investigation confirms that the plaintiff was operating his vehicle in a reckless fashion. (Trooper Kick Affidavit, para. 7). Based on this uncontroverted evidence, the defendant had probable cause to arrest the plaintiff.

In challenging probable cause, the plaintiff bears the burden of demonstrating that there is no reasonable basis for instituting the criminal proceedings. Zenik v. O'Brien, 137 Con. 592, 597 (1951). Clearly, the plaintiff has not satisfied this burden. Further, the fact that the plaintiff may not agree with the decision by the defendant is of no significance to the defendant's

---

which is the construction and maintenance of roads and sidewalks, or in any parking area for ten cars or more or upon any private road on which a speed limit has been established in accordance with the provisions of section 14-218a or upon any school property recklessly, having regard to the width, traffic and use of such highway, road, school property or parking area, the intersection of streets and the weather conditions. The operation of a motor vehicle upon any such highway, road or parking area for ten cars or more at such a rate of speed as to endanger the life of any person other than the operator of such motor vehicle, or the operations, downgrade, upon any highway, of any motor vehicle with a commercial registration with the clutch or gears disengaged, or the operation knowingly of a motor vehicle with defective mechanism, shall constitute a violation of the provisions of this section. The operation of a motor vehicle upon any such highway, road or parking area for ten cars or more at a rate of speed greater than eighth-five miles per hour shall constitute a violation of the provisions of this section.

(b) Any person who violates any provision of this section shall be fined not less than one hundred dollars nor more than three hundred dollars or imprisoned not more than thirty days or be both fined and imprisoned for the first offense and for each subsequent offense shall be fined not more than six hundred dollars or imprisoned not more than one year or be both fined and imprisoned.

formulation of probable cause.  Baker v. McCollan, 443 U.S. 137, 145-46 (1979) (There is no

requirement that an officer otherwise equipped with probable cause to arrest an individual has a

duty to arbitrate the matter with the suspect.).  In this case, the plaintiff seems to take issue with

*the particular charge*, i.e., reckless driving, for which he was arrested by the defendant.

However, the well established rule of law is that probable cause to arrest *for any offense* is

sufficient to overcome the charge of false arrest or imprisonment.  See, e.g., Avery v. King, 110

F.3d 12 (6th Cir. 1997); Biddle v. Martin, 992 F.2d 673 (7th Cir. 1993); Pfannstiel v. City of

Marion, 918 F.2d 1178 (5th Cir. 1990).  Finally, the fact that plaintiff's criminal charge may

have been nolled is of no significance to the Court's determination concerning probable cause.

As the Supreme Court has stated, "A peace officer who arrests someone with probable cause is

not liable for false arrest simply because the innocence of the suspect is later proved ... A

policeman's lot is not so unhappy that he must choose between being charged with a dereliction

of duty if he does not arrest when he has probable cause, and being mulcted in damages if he

does." Pierson v. Ray, 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

The defendant had probable cause to arrest the plaintiff, accordingly, he is entitled to

judgment as a matter of law.

**B.**    **In The Alternative, Defendant State Police Officer Kick Is Entitled To Qualified Immunity**

Even should the Court find that the plaintiff was subjected to an arrest without probable

cause, the defendant would remain entitled to summary judgment on plaintiff's false arrest claim

because he enjoys qualified immunity.  The shield of qualified immunity generally protects

9

government officials from liability for damages on account of their performance of discretionary official functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). The availability of the defense turns upon the "objective legal reasonableness" of the allegedly unlawful official action, "assessed in light of the legal rules that were clearly established at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting Harlow v. Fitzgerald, 457 U.S. at 818-19, 102 S.Ct. at 2739). See also, Glass v. Mayas, 984 F.2d 55, 57 (2d Cir. 1993). The qualified immunity defense is intended to "strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Lee v. Sandberg, 136 F.3d 94, 100 (2d Cir. 1997) (citations omitted). The rule serves to "protect government officials from charges that they knowingly violated standards that were in fact unknowable...." Hayekost v. U.S. Dept. of Navy, 925 F.2d 316 (9th Cir. 1991) (citations omitted).

As set forth by the U.S. Supreme Court in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 252 (2001), in a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive.

Thus, qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier, supra, 533 U.S. at 200, citing Mitchell v. Forsyth, 472 U.S. 511, 526, 86 L.Ed. 2d 411, 105 S. Ct. 2806 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id., 533 U.S. at 201. As a result, the Court has " repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Id., citing Hunter v. Bryant, 502 U.S. 224, 227, 116 L. Ed. 2d 589, 112 S. Ct. 534 (1991) (per curiam).

The right at issue in the present case--the right to be free from arrest absent probable cause--is a clearly established right. See Soares v. State of Connecticut, 8 F.3d 917, 920 (2d Cir. 1993). Therefore, as the Second Circuit has explained, there are two instances in which the officers can have qualified immunity from a false arrest claim.

> In the context of allegations of false arrest, ... an arresting officer is entitled to qualified immunity from a suit for damages on a claim for arrest without probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.

Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997) (internal quotation marks and citation omitted).

For the reasons stated supra, the defendant clearly had probable cause to conclude that the plaintiff committed the crime of reckless driving on April 10, 2000. Specifically, the plaintiff admitted to applying his brakes on a public highway while a fellow motorist was following closely behind. Further, motorist McMahon gave a statement to the defendant indicating that the

11

plaintiff was operating his vehicle in a reckless manner. Qualified immunity leaves ample room for mistaken judgments. <u>Saucier v. Katz</u>, <u>supra</u>. <u>See also</u> <u>Malley v. Briggs</u>, 475 U.S. 335, 343, 89 L.Ed.2d 271, 106 S.Ct. 1092 (1986). Moreover, the objective reasonableness test is met--and the defendant is entitled to qualified immunity--if officers of reasonable competence could disagree on the legality of defendant's actions. <u>Id</u>. Clearly, this is the case here as reasonable officers could conclude that the plaintiff had operated his vehicle in a reckless fashion in violation of Conn. Gen. Stat. §14-222.[2]

### C.    Plaintiff's Equal Protection Claim Is Unfounded

The plaintiff also asserts in his action that his Fourteenth Amendment Equal Protection rights were violated by the defendant. Presumably, plaintiff's assertion is premised on the fact that he was charged by the defendant with a different motor vehicle violation than the other motorist involved in the incident of April 10, 2000. This fact alone hardly supports an Equal Protection Claim.

The Equal Protection Clause of the Fourteenth Amendment directs, in essence, that similarly situated persons should be treated alike. <u>Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 439, 87 L.Ed.2d 313, 105 S.Ct. 3249 (1985). In this Circuit, it is established that a plaintiff can establish a violation of equal protection if (1) the person, compared with others similarly situated, was selectively treated; and (2) such selective treatment was based on impermissible

---

[2]    In fact, based on the totality of the circumstances, it is far more likely that officers of reasonable competence would <u>concur</u> that the defendant's decision to arrest the plaintiff was appropriate and lawful.

the incident of April 10, 2000 was engaged in other inappropriate activity (following too closely) and was appropriately cited by the defendant for this violation.

In sum, plaintiff's equal protection claim is untenable and should be summarily dismissed.

## III.    CONCLUSION

For all of the foregoing reasons, the defendant is entitled to summary judgment.

DEFENDANT
Trooper Kick

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY: _____
Matthew B. Beizer
Assistant Attorney General
Federal Bar No. ct16304
110 Sherman Street
Hartford, CT  06105
Telephone No.: (860) 808-5450
Fax No.: (860) 808-5591
E-Mail:  matthew.beizer@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing was mail sent by first-class mail, postage prepaid to the following on this 31st day of October, 2003:

John R. Williams, Esq.
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT  06510

_____
Matthew B. Beizer
Assistant Attorney General

14

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEFFREY P. CHRISTMAN | : | CIVIL NO. 3:02CV1405(CFD) |
| | : | |
| VS. | : | |
| | : | |
| TROOPER KICK | : | OCTOBER 31, 2003 |

### AFFIDAVIT OF DEFENDANT STATE POLICE TROOPER KICK

The undersigned hereby attests that:

1.    I am over the age of eighteen (18) and understand and believe in the obligations of an oath.

2.    I am a Connecticut State Police Officer.

3.    On April 10, 2000, I was on duty when I received a call from State Police Dispatch concerning a motor vehicle accident involving two (2) motorists on I-95 in Bridgeport.

4.    I responded to the call and investigated the incident by speaking with both involved parties and examining both vehicles.

5.    The plaintiff was operating a car, while the other motorist (Mr. McMahon) was driving a tractor-trailer.

6.    During my investigation into the incident, the plaintiff stated that he was traveling in front of Mr. McMahon's vehicle and admitted to me that he applied his brakes several times.

7.    During my investigation into the incident, Mr. McMahon stated to me that he was traveling behind the plaintiff and, on several occasions, the plaintiff applied his brakes.

8.    During my investigation into the incident, Mr. McMahon further reported to me that as a result of the plaintiff's braking, his truck struck the rear bumper of the plaintiff's car.

9.    During my investigation into the incident, the plaintiff was, at times, uncooperative by either refusing to answer certain questions, or only partially answering them.

10.    Following my investigation, I concluded that both parties were at fault and cited them both for motor vehicle violations.

11.    The plaintiff was charged with Reckless Driving for braking his vehicle with a vehicle traveling closely behind in violation of Conn. Gen. Stat. § 14-222.

12.    The other motorist was charged with following too closely in violation of Conn. Gen. Stat. § 14-240.

13.    It is my recollection that both motorists involved in this incident were Caucasian males.

_____
State Police Trooper Kick

Subscribed and sworn to before me this __21__ day of __OCTOBER_____, 2003.

_____

Commissioner of the Superior Court
~~Notary Public~~
~~My Commission Expires:~~ _____

2

# CONNECTICUT UNIFORM POLICE ACCIDENT REPORT    FORM PR-1 REV.12/9

GPS READINGS: Latitude:

Time:    Longitude:

**FOR DOT USE ONLY**

| DATE OF ACCIDENT Month, Day, Year | MILITARY TIME | ACCIDENT SEVERITY | # VEHICLES INVOLVED | PAGE # | POLICE CASE NUMBER |
|---|---|---|---|---|---|
| 01/10/00 | 1519 | ☐ Fatal ☐ Injury ☒ PDO | 2 | 1 of 2 | 600-15805 |

| TOWN OR CITY NAME | TOWN CODE | ACCIDENT OCCURRED ON (Street Name or Route #) | AT IT'S INTERSECTION WITH (Street Name or Route #) |
|---|---|---|---|
| WESTPORT | 0155 | I 95 WESTBOUND | at EXIT 01 |

IF NOT AT INTERSECTION  ☐ Feet  2. DIRECTION  3. NAME OF NEAREST INTERSECTING STREET, TOWN LINE OR MILE MARKER

1. MEASURE DISTANCE  ☐ Tenths of Mile  ☐ North  ☐ South
(✓ Check Appropriate Boxes)  ☐ Meters  ☐ East  ☐ West
☐ Kilometers

Accident Occurred:  ☐ On Private Property  ☐ Parking Lot

| | |
|---|---|
| TRAFFIC UNIT #1  ☒ Vehicle  ☐ Pedestrian  ☐ Non-Contact Vehicle | TRAFFIC UNIT #2  ☒ Vehicle  ☐ Pedestrian  ☐ Non-Contact Vehicle |
| OPERATOR #1 or PEDESTRIAN NAME (Last, First, Middle Initial) | OPERATOR #2 or PEDESTRIAN NAME (Last, First, Middle Initial) |
| CHRISTMAN, JEFFREY P | MCMAHAN, LAYMAN T |
| ADDRESS (Street Number & Name)  28 ARLINGTON ST | PROPER LICENSE CLASS  ☒ Yes  ☐ No | ADDRESS (Street Number & Name)  2780 CO RD 47 | PROPER LICENSE CLASS  ☒ Yes  ☐ No |
| CITY OR TOWN  WEST HAVEN  STATE CT  ZIP CODE 06516  SEX ☒ M ☐ F | CITY OR TOWN  FORT PAYNE  STATE AL  ZIP CODE 55967  SEX ☒ M ☐ F |
| OPERATOR LICENSE #  036071704  STATE CT  DATE OF BIRTH 02/29/71 | OPERATOR LICENSE #  5228527  STATE AL  DATE OF BIRTH 04/20/60 |
| OWNER'S NAME (Enter SAME if Owner is Operator)  FORD MOTOR CREDIT | OWNER'S NAME (Enter SAME if Owner is Operator)  FLEET CAR LEASE |
| ADDRESS (Street Number and Name)  BOX 105704 | ADDRESS (Street Number and Name)  314 SOUTH BROADWAY #102 |
| CITY OR TOWN  ATLANTA  STATE GA  ZIP CODE 3034B  BODY TYPE PU | CITY OR TOWN  ADA  STATE OK  ZIP CODE 74820  BODY TYPE TT |
| REGISTRATION #  96691O  STATE CT  VEHICLE YEAR AND MAKE  98 FORD | REGISTRATION #  1TW154  STATE OK  VEHICLE YEAR AND MAKE  2000 FRHT |
| VEHICLE IDENTIFICATION NUMBER  1FTR X0X7 0594 | VEHICLE IDENTIFICATION NUMBER  1FUNA X7Y1 6488 |
| CARRIER NAME | CARRIER NAME |
| CARRIER ADDRESS (#, Street, City or Town, State, Zip Code) | CARRIER ADDRESS (#, Street, City or Town, State, Zip Code) |
| SOURCE OF CARRIER NAME  ☐ USDOT #  ☐ Shipping Papers  ☐ Driver  ☐ Side of Vehicle  ☐ ICC/MC # | SOURCE OF CARRIER NAME  ☐ USDOT #  ☐ Shipping Papers  ☐ Driver  ☐ Side of Vehicle  ☐ ICC/MC # |
| GROSS VEHICLE WEIGHT RATING #  HAZARDOUS MATERIAL PLACARD  REQUIRED? ☐ Yes ☐ No  4 Digit #  DISPLAYED? ☐ Yes ☐ No | GROSS VEHICLE WEIGHT RATING #  HAZARDOUS MATERIAL PLACARD  REQUIRED? ☐ Yes ☐ No  4 Digit #  DISPLAYED? ☐ Yes ☐ No |
| HAZARDOUS CARGO RELEASED? ☐ Yes ☒ No  ENFORCEMENT ACTION TAKEN  ☐ None  ☒ Arrest ☐ Written Warning ☐ Verbal Warning | HAZARDOUS CARGO RELEASED? ☐ Yes ☒ No  ENFORCEMENT ACTION TAKEN  ☐ None  ☒ Arrest ☐ Written Warning ☐ Verbal Warning |
| STATUTE OR ORDINANCE #'S  14-222 | SUBJECT OF ACTION  ☒ Operator ☐ Carrier  ☐ Owner ☐ Pedestrian | STATUTE OR ORDINANCE #'S  14-240 * | SUBJECT OF ACTION  ☒ Operator ☐ Carrier  ☐ Owner ☐ Pedestrian |
| AUTOMOBILE INSURANCE — NAME — POLICY #  GEICO # K59029 | AUTOMOBILE INSURANCE — NAME — POLICY #  INSURANCE CO. OF PENNSYLVANIA  TP24SB131AA |
| PARTS OF VEHICLE DAMAGED  REAR | PARTS OF VEHICLE DAMAGED  FRONT |
| VEHICLE TOWED TO:  WESTPORT CENTER  ☐ TOWED DUE TO DAMAGE | VEHICLE TOWED TO:  N/A  ☐ TOWED DUE TO DAMAGE |

| | L. | M. | N. | NAME AND ADDRESS OF EACH INVOLVED PERSON | Date of Birth | O. | P. | Q. | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | N | 01 | TRAFFIC UNIT #1 OPERATOR OR PEDESTRIAN #1 | | 4 | 2 | 1 | 1 |
| 2 | 2 | N | 01 | TRAFFIC UNIT #2 OPERATOR OR PEDESTRIAN #2 | | 4 | 3 | 1 | 2 |
| 3 | | | | | Month Day Year | | | | 3 |
| 4 | | | | | Month Day Year | | | | 4 |
| 5 | | | | | Month Day Year | | | | 5 |
| 6 | | | | | Month Day Year | | | | 6 |
| 7 | | | | | Month Day Year | | | | 7 |
| | | | | | | | | | 8 |

ALL INVOLVED PERSONS

ACCIDENT DIAGRAM   Case 3:02-cv-01405-CFD   Document 15-2   Filed 11/03/2003   Page 16 of 21



*NOT TO SCALE*

*CITY OF BRIDGEPORT*

*JERSEY BARRIER*
*SHOULDER*

*POINT OF IMPACT*

*I95 WESTBOUND*
*SHOULDER*
*MEDIAN*

| TRAFFIC UNIT # 1   TRAVELING | TRAFFIC UNIT # 2   TRAVELING |
|---|---|
| ☐N ☐S ☐E ☒W ON   I95 | ☐N ☐S ☐E ☒W ON   I95 |

Veh.#1 was traveling I95 westbound in the right lane of three in the City of Bridgeport when he was struck from behind by veh.#2 traveling directly behind him.

Operator #1 stated that he was originally traveling in the left lane when he noticed a tractor trailer behind him. Aware that truck was not allowed in the left lane, operator #1 stated he motioned to him to move to the center lane. Operator #1 then said that the tractor trailer did move to the center lane now pulling up beside him. Operator #1 then stated he rolled down his window as did operator #2 when he said to the truck driver, "Third lane no." Operator #1 stated that operator #2 replied, "Fuck You." Operator #1 stated he then moved into the center lane in front of the truck which began to tailgate him. Operator #1 stated he tapped his brakes several times to back him off, but he would not. Operator #1 stated this had continued when he moved into the right lane to exit. Operator #1 stated he was suddenly struck from behind by veh.#2. Operator #1 throughout our questioning seemed very upset and at times uncooperative either refusing to answer questions, or only partially answering them.

Operator #2 stated he was traveling westbound in the center lane when a man in a green pickup truck, (veh.#1) pulled up on his right side and began to yell and make gestures at him. He stated veh.#1 then pulled in front of him and began to apply his brakes causing veh.#2 to

| | | |
|---|---|---|
| DAMAGE TO PROPERTY OTHER THAN INVOLVED VEHICLES | 1. DESCRIBE THE NATURE AND EXTENT OF PROPERTY DAMAGE | |
| | NAME AND ADDRESS OF PROPERTY OWNER | |
| | 2. DESCRIBE THE NATURE AND EXTENT OF PROPERTY DAMAGE | |
| | NAME AND ADDRESS OF PROPERTY OWNER | |

| RANK AND SIGNATURE OF INVESTIGATING OFFICER | OFFICER ID# | POLICE AGENCY IDENTIFICATION | REPORT DATE | CASE STATUS | SUPERVISOR |
|---|---|---|---|---|---|
| TPR. U | OB11 | CSP-C | 4-15-01 | OPEN ☐  CLOSED ☒ | 788   04/16 |



| CASE NUMBER | INCIDENT TYPE | PROSECUTOR'S REPORT | | | | | |
|---|---|---|---|---|---|---|---|
| G00-159905 | M/V Accident | ☐ HAS BEEN SENT | ☐ SUPPLEMENTARY | ☐ RE-OPEN | ☐ ASSIST | ☒ CLOSING | |

Continued from PR-1:

brake as well. Operator #2 stated he moved into the left lane to get away from veh.#1, but he moved in front of him applying his brakes again. At one point, operator #2 stated he struck veh.#1 from behind. Operator #2 stated both vehicles then proceeded off exit 18 where he phoned the State Police. At approximately 1625 hours, a written statement was taken from operator #2 by Tpr. Katz #687. (SEE ATTACHED STATEMENT)

Upon my arrival, both vehicles were at the end of the exit 18 off ramp. Veh.#1 was observed with rear end damage to his bumper, and veh.#2 had front end damage, both minor. No paint transfer was observed on either vehicle. Veh.#1 bumper was observed to have been bent downwards and had a small hole pushed into its soft plastic outer frame. This small hole was consistent by height with a bolt that veh.#2 had protruding from his front bumper. A drive by the scene of the accident found no debris or tire marks that could be identified as from this accident.

Based on evidence and operator statements, it is found that both parties were at fault for this accident. Operator #2 was found at fault for following too close for a commercial vehicle rendering him unable to stop prior to colliding with the car in front of him. He was issued an infraction for 14-240*. Operator #1 was found at fault for Reckless Driving, braking his vehicle with the vehicle directly behind him traveling too close causing them to collide. Operator #2 was taken into custody at approximately 1620 hours and verbally informed of his rights which he stated he understood. Operator #2 was transported back to Troop G for processing. Upon our arrival at approximately 1656 hours, the accused was reinformed of his Miranda Right which he again stated he understood signing a form indicating such. The accused was then processed which consisted of fingerprints and photographs. At approximately 1715 hours, operator #1 was given the opportunity to have a written statement taken on his account of the incident which he did. The accused was then released on a $500.00 bond pending a court appearance in GA #2 on 4-24-00. Upon his arrest, operator #1 attitude changed as he became cooperative, and willing to answer any questions. This case will be closed.

| STATUS OF CASE | 1. ACTIVE  2. CLEARED ARREST | 3. SUSPENDED  4. X-CLEARED | F. FUGITIVE  6. NO CRIMINAL ASPECT | CODE 2 | AGE OF OLDEST ACCUSED (MUST BE USED WHEN CODE 2 OR 4 USED.) 29 | PAGE NUMBER 3 of 3 |
|---|---|---|---|---|---|---|
| SUPERVISOR'S SIGNATURE Sgt R Drumm | | ID NO. 188 | INVESTIGATING TPR'S SIGNATURE TMKL | | ID NO. 0811 | DATE OF REPORT 4-15-00 |

MASTER COPY

STATEMENT OF *CHRISTMAN, JEFFREY*

I, JEFFREY P. CHRISTMAN _____, date of birth 3-29-71,
of 138 ARLINGTON ST _____, town/city of WEST HAVEN CT 06516

make the following statement, without fear, threat, or promise, knowing that it may be used against me in court. I have been advised of my right to remain silent, that I have a right to consult with an attorney prior to any questioning and to have the attorney present during the questioning; that, if I do talk to the police, I can terminate the questioning at any time; that if I cannot afford an attorney, one will be appointed for me by the court. I understand the above rights and, at this time, waive them. I have also been advised that any statement(s) made herein which I do not believe to be true, and which statement is intended to mislead a public servant in the performance of his/her official function, is a crime under C.G.S. section 53a-157.

ON 4-10-00 AT APPROXIMATELY 1600 HOURS I WAS DRIVING MY 1998 FORD PICKUP CT REG 9C6910 IN THE HIGH SPEED LANE I-91 WESTBOUND WHEN I OBSERVED A GREEN (BLUE) TRACTOR TRAILER MOVING TOWARDS ME FROM BEHIND. THE TRUCK CAME UP FROM BEHIND AND BEGAN TO TAIL GATE ME SO THAT I COULD BARELY SEE HIS NUMBER IN MY REARVIEW. I MOTIONED TO HIM TO MOVE INTO THE CENTER, WHICH AFTER SOME TIME HE EVENTUALLY DID HE THEN PULLED UP BESIDE ME AND I ROLLED DOWN MY DRIVERS WINDOW AS HE DID WITH HIS PASSENGERS SIDE. I YELLED TO HIM, "THIRD LANE NO." WHEN HE REPLIED. "FUCK YOU." I THEN ROLLED UP MY WINDOW AND CONTINUED TO DRIVE ON MOVING INTO THE CENTER LANE IN FRONT OF THE TRUCK. ONCE I WAS IN FRONT OF THE TRUCK, HE SPED UP BEHIND ME AGAIN TAILGATING AS BEFORE. KNOWING HE WAS TOO CLOSE, I TAPPED MY BRAKES TWICE TO WARN HIM HES TOO CLOSE, BUT HE NEVER BACKED OFF. DUE TO THE FACT I WAS PREPARING TO EXIT THE HIGHWAY, I SLOWLY MOVED INTO THE RIGHT WHEN I NOTICED THE TRUCK FOLLOWING ME. ONCE WE WERE BOTH IN THE RIGHT LANE, THE TRUCK AGAIN SPED UP TAILGATING ME WHEN I TAPPED MY BRAKES TWICE A SECOND TIME HE AGAIN DID NOT BACK OFF WHEN A FEW MOMENTS LATER HE STRUCK ME FROM BEHIND ONCE. THEN A SECOND

By affixing my signature to this statement, I acknowledge that I have read it and/or have had it read to me and it is true to the best of my knowledge and belief.

Signature: _____

Witness: _____

Signature: _____

Witness: _____

Personally appeared the signer of the foregoing statement and made oath before me to the truth of the matters contained therein.

If notarized, endorse here: _____ TPR. L # 8 _____

Page 1 of 2 Pages

TIME 3 OR 4 SECONDS LATER I BEGAN TO MOTION TO THE TRUCK TO

GET OFF THE NEXT EXIT BUT HE KEPT ON DRIVING. AS I WATCHED, I

SAW THE TRUCK DRIVER WAS DOING ONE EXIT 18, SO I PROCEEDED

OFF AS WELL. UPON FIRST SPEAKING WITH THE TRUCK DRIVER I SAW

THAT HE HAD A CELL PHONE I ASKED IF HE HAD CALLED THE POLICE

AND HE STATED HE HAD.

By affixing my signature to this statement, I acknowledge that I have read it and/or have had it read to me and it is true to the best of my knowledge and belief.

Witness: _____    Signature: X_____

Witness: _____

Personally appeared the signer of the foregoing statement and made oath before me to the truth of the matters contained therein.

If notarized, endorse here: _____ TPR. ___ #B__

Page **2** of **2** Pages

MASTER COPY

Sep 18 '02    9:10    P.07/10

DEPARTMENT OF PUBLIC SAFETY
DIVISION OF STATE POLICE

Date _____
Time Started _____
Time Ended _____

WITNESS STATEMENT OF __WAYMON MCMAHAN__

I, __WAYMON MCMAHAN_____, date of birth __4/2/60__

of __7780 COUNTY RD #47_____, town /city of __FORT PAYNE , AL__

make the following statement, without fear, threat, or promise. I have been advised that any statement(s) made herein which I do not believe to be true, and which statement is intended to mislead a public servant in the performance of his/her official function, is a crime under C.G.S. section 53a-157.

__ON 4/10/00 I WAS TRAVELING ON I-95 SOUTHBOUND__
__SEVERAL MILES PRIOR TO EXIT 18 IN THE CENTER LANE.__
__A GUY IN A GREEN PICKUP PULLED OF UP NEXT TO ME__
__AND STARTED PLAYING GAMES. HE WAS YELLING AND__
__GESTURING AT ME BUT I COULDNT HEAR HIM. HE__
__CUT IN FRONT OF ME AND KEPT SLAMMING ON HIS__
__BRAKES. WHEN I CHANGED LANES, HE CHANGED IN FRONT__
__OF ME AND KEPT BRAKING. I TRIED TO GET__
__AWAY FROM HIM BUT COULDNT AND EVENTUALLY__
__STRUCK HIM FROM BEHIND. WE BOTH GOT OFF OF__
__EXIT 18, AND I CALLED THE STATE POLICE WHILE__
__WE WERE TRAVELING.__

By affixing my signature to this statement, I acknowledge that I have read it and/or have had it read to me and it is true to the best of my knowledge and belief.

Witness: __Theez #687_____    Signature: __X_____

Witness: _____    Signature: _____

Personally appeared the signer of the foregoing statement and made oath before me to the truth of the matters contained therein.

If notarized, endorse here: _____

Page 1 of __1__    Pages.

Sep 18 '02    9:11    P.08/10

**Officer of the State of Connecticut**

INSTRUCTIONS: Forward original to Clerk of Court and give yellow copy to Defendant.

| (Name of Defendant) | ADDRESS OF DEFENDANT | ZIP CODE | TELEPHONE NO. |
|---|---|---|---|
| CHRISTMAN, JEFFREY R | 138 ARLINGTON ST. WEST HAVEN, CT | 06516 | 933-2648 |

| JUDICIAL DISTRICT OR G.A. | ADDRESS OF COURT |
|---|---|
| GA-2 | 172 GOLDEN HILL ST BRIDGEPORT, CT |

| CRIME(S) CHARGED AGAINST DEFENDANT | AMOUNT OF BOND | APPEARANCE DATE AND TIME (less than 14 days from arrest date) |
|---|---|---|
| RECLESS DRIVING (14-222) | $500.00 | 4-24-00    1000    A.M. |

I, the above-named Defendant, understand that I am being released from custody under the Amount of Bond set above.

I promise to appear before the above-named court on the Appearance Date and Time specified above and at any other place and time to which the charge(s) against me may be continued and in any other court to which the charge(s) against me may be transferred.

I also understand that I am being released on a:

- ☐ NON-SURETY BOND
- ☒ SURETY BOND
- ☐ CASH BOND
- ☐ REAL ESTATE BOND
- ☐ 10% CASH BOND (Must be authorized by a judge (P.B. Sec. 658, 664))
- ☐ _____

in the above Amount of Bond, to insure my appearance as promised above, until final judgment is rendered.

I ALSO UNDERSTAND THAT IF I FAIL TO APPEAR, in accordance with the foregoing promises, I will be liable for the full Amount of Bond, including forfeiture of any amount deposited, and I will be committing the crime of FAILURE TO APPEAR and be subject to the following penalties:

1. **IMMEDIATE REARREST, OR ISSUANCE OF A CAPIAS.**
2. **ONE YEAR IN PRISON or $2,000 FINE or BOTH,** if I am charged with a Misdemeanor(s).
   **FIVE YEARS IN PRISON or $5,000 FINE or BOTH,** if I am charged with a Felony(ies).

I also promise to satisfy all the special conditions stated below which were ordered by the court as a condition of my release on an Appearance Bond. I also understand that IF I FAIL TO SATISFY ANY OF THESE CONDITIONS THE COURT MAY MODIFY OR ADD ADDITIONAL CONDITIONS OR REVOKE MY RELEASE.

I have read/have had read to me the notices on the back side of this form and I understand the notices.

**A.** SPECIAL CONDITIONS OF RELEASE (if applicable)
1. Do not commit a federal, state or local crime.

| SIGNED (Defendant) X | DATE SIGNED (mo., day, yr.) 4-10-00 |
|---|---|
| SIGNED (Parent or Guardian if minor) | DATE SIGNED (mo., day, yr.) |

The above information and statements were subscribed and sworn to before me.

| SIGNED (Police Officer, Assistant Clerk) TPR. ____ #811 | DATE AND TIME SIGNED 4-10-00  2002  P.M. | JOB TITLE TROOPER | POLICE DEPT. (if applicable) CSP-G |
|---|---|---|---|

**COMPLETE THE APPROPRIATE SECTION BELOW IF A CASH, 10% CASH OR SURETY BOND IS REQUIRED**

### CASH BOND

| AMOUNT OF BOND $ | TYPE OF BOND ☐ CASH  ☐ 10% CASH | AMOUNT DEPOSITED IN WORDS | AMOUNT IN NUMERALS $ |
|---|---|---|---|

| DEPOSITED BY (Name and address of Depositor) | | ZIP CODE | RECEIPT NO. |
|---|---|---|---|

| CASH TAKEN BY (Signature of Police Off., Bail Comm'r, Asst. Clerk) | DATE AND TIME BOND TAKEN ____.M. | NAME OF JUDGE AUTHORIZING 10% BOND (if applicable) |
|---|---|---|

I, the Depositor, understand that if the above-named Defendant fails to appear in accordance with the foregoing promises, I WILL BE LIABLE FOR THE FULL AMOUNT OF BOND, including forfeiture of any Amount Deposited.

I also understand that upon discharge of the Bond, as specified above, the Amount Deposited will be returned to the above-named Depositor, less any fee that may be required by statute.

| SIGNED (Depositor) | DATE SIGNED (mo., day, yr.) |
|---|---|

The above information and statements were subscribed and sworn to before me.

| SIGNED (Police Officer, Assistant Clerk) | DATE AND TIME SIGNED ____.M. | JOB TITLE | POLICE DEPT. (if applicable) |
|---|---|---|---|

### SURETY BOND

| NAME OF SURETY | ADDRESS OF SURETY P.O. Box 182 Stratford CT 06615 | TELEPHONE NO. 375-2640 |
|---|---|---|

| LICENSE NO. 000958241 | TOTAL AMOUNT OF BAIL LICENSED TO GIVE $ 5000— | TOTAL AMOUNT NOW SURETY TO (Exclusive of this case) $ | FOR COURT USE  FILE DATE |
|---|---|---|---|

I, the above-named Surety, understand that if the above-named Defendant fails to appear, in accordance with the foregoing promises, I will be liable to the State of Connecticut for the above Amount of Bond.

| SIGNED X | DATE SIGNED (mo., day, yr.) 4-10-00 |
|---|---|

The above information and statements were subscribed and sworn to before me.

| SIGNED (Police Officer, Assistant Clerk) TPR. ____ #811 | DATE AND TIME SIGNED 4-10-00  1957  P.M. |
|---|---|

| JOB TITLE TROOPER | POLICE DEPT. (if applicable) CSP-G | SUPERIOR COURT DOCKET NO. |
|---|---|---|