UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFFREY P. CHRISTMAN | : |
| VS. | :   NO. 3:02CV1405 (CFD) |
| TROOPER KICK (#0811) | :   NOVEMBER 20, 2003 |

## BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

This is an action for false arrest, malicious prosecution and deprivation of equal protection of the laws, brought by a citizen against a Connecticut State Trooper who arrested him after he had been victimized by the aggressive and dangerous misconduct of an out-of-state trucker on Interstate 95

The plaintiff's evidence shows that on the afternoon of April 10, 2000, the plaintiff was lawfully operating a motor vehicle on Interstate Highway 95 westbound near Exit 26. He was fully complying with all applicable laws and regulations. Without any reason or explanation, he was subjected to verbal taunting and harassment by a truck driver named Layman J. McMahan of For Payne, Alabama, who was tailgating the plaintiff in the left lane of the three-lane highway. McMahan thereupon rammed his truck into the rear of the plaintiff's vehicle. (Plaintiff's affidavit, ¶ 3)

The defendant was a Connecticut State Trooper. He arrived at the scene and investigated the aforesaid incident and confirmed by physical evidence that in fact the truck of McMahan had struck the rear bumper of the plaintiff's vehicle McMahan admitted doing so, but denied doing so intentionally. The plaintiff fully explained the facts of what had taken place. The defendant thereupon charged the plaintiff with the offense of reckless driving, a very serious offense,[1] took the plaintiff into custody, transported him to the police barracks, and after obtaining a written statement describing in frightening detail the abusive and dangerous actions of the trucker, imprisoned the plaintiff on a five thousand dollar surety bond[2] although the plaintiff was a West Haven resident with no criminal history. He charged McMahan with only a minor infraction, however. (Id. ¶ 4)

The defendant knew that the plaintiff was not guilty of the crime of reckless driving[3] and he further knew that McMahan was in fact guilty of such crime. (Ibid.)

---

[1] Section 14-222(b) of the Connecticut General Statutes imposes a penalty of thirty (30) days imprisonment and a $300 fine for a first offense of reckless driving, with increased penalties for subsequent offenses.

[2] The defendant has submitted a copy of the surety bond to the court at an attachment to his motion.

[3] Recklessness is "more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them....It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action." It is "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." Shay v. Rossi, 253 Conn. 134, 181, 749 A.2d 1147 (2000); Bolmer v. McKulsky, 74 Conn. App. 499, 503-

As a result of the actions of the defendant described above, the plaintiff was charged as a criminal, was required to post a bail bond to obtain his release from imprisonment, was required to appear numerous times in the Superior Court at Bridgeport as such, was required to expend money to retain the services of criminal lawyers to defend himself against the said false accusation, and was caused to suffer emotional distress. (Id. ¶ 5)  On or about February 4, 2002, an Assistant State's Attorney in the Superior Court at Bridgeport nolled[4] the aforesaid false charge. (Id. ¶ 6)

The defendant, relying on his own affidavit, has moved for summary judgment, contending that he had probable cause to arrest the plaintiff on a charge of reckless driving.

---

04 (2003). "Recklessness is a state of consciousness with reference to the consequences of one's acts. It is more than negligence, more than gross negligence. The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. Wanton misconduct is reckless misconduct. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action." Craig v. Driscoll, 262 Conn. 312, 342, 813 A.2d 1003, 1022 (2003).

[4]
A nolle prosequi is a formal entry upon the record by the prosecuting attorney, declaring that he or she will not prosecute the case any further. (Black's Law Dictionary 1198 (Rev., 4th Ed. 1968); Cann, Nolle Prosequi in Connecticut, 4 CONN. L. REV. 117, 118 (1971).] In 1781, the Connecticut Supreme Court held "Where the State's Attorney enters a nolle it is to be intended that there was no cause of action; and it is more conclusive than an acquittal of the Grand Jury." State v. Stanley, 2 Kirby 25 (1787).

"The standards governing summary judgment are well-settled. Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant....Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F.3d 139, 140-41 (2nd Cir. 2003), *quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160 (1970). "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2003).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Appleton v. Board of Education, 254 Conn. 205, 757 A.2d 1059 (2000); Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991). The evidence of the party against whom summary judgment is sought must be believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court must construe the evidence in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor. Appleton, supra. Adickes v S. H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993) Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993); Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105 (1994); D.H.R. Construction Co. v Donnelly, 180 Conn. 430, 434 (1980); Connell v. Colwell, 214 Conn. 242, 246-47 (1990). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party. So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied. In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution. R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997). "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." Id. at 59, quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997). Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir 1996)

"The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right." Loria v. Gorman, 306 F.3d 1271, 1291 (2d Cir. 2002) (quoting Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991). Cf. Grand v. City of Long Beach, 315 F.3d 1081, 1089 (9th Cir. 2002).

"Typically, the elements of a false arrest claim are said to be: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and, (4) the defendant had no privilege to cause the confinement." Nelson v. City of Cambridge, 101 F. Supp. 2d 44, 48 (D. Mass. 2000) (Gertner, J.), citing Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3 n. 6 (1st Cir. 1995).

"Although the plaintiff bears the burden of proof on the issue of unlawful arrest, she can make a prima facie case simply by showing that the arrest was conducted without a valid warrant. At that point, the burden shifts to the defendant to provide some evidence that the arresting officers had probable cause for a warrantless arrest. The plaintiff still has the ultimate burden of proof, but the burden of production falls on the defendant....If the defendant is unable or refuses to come forward with any evidence that the arresting officers had probable cause and the plaintiff's own testimony does not establish it, the court should presume the arrest was unlawful." Dubner v. City an County of San Francisco, 266 F.3d 959, 965 (9th Cir. 2001).

In general, probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime. Dunaway v. New York, 442 U.S. 200, 208 n.9 (1979); Wong Sun v. United States, 371 U.S. 471, 479 (1963); Brinegar v. United States, 338 U.S. 160, 175-76 (1949); Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999); Thompson v. Wagner, 319 F.3d 931, 934 (7th Cir. 2003); Breen v. Garrison, 169 F.3d 152, 153 (2d Cir. 1999); Mejia v. City of New York, 119 F. Supp. 2d 232, 253 (E.D.N.Y. 2000) (Trager, J.). "'[P]robable cause exists only if the facts and circumstances within the arresting officer's knowledge 'are sufficient to lead an ordinarily prudent officer to conclude that an offense has been, is being, or is about to be committed, and that the putative arrestee is involved in the crime's commission.'" Iacobucci v. Boulter, 193 F.3d 14, 22 (1st Cir. 1999). Quoting Logue v. Dore, 103 F.3d 1040, 1044 (1st Cir. 1997). Cf. Rogers v. Pendleton, 249 F.3d 279, 290 (4th Cir. 2001).

This is a typical case of conflicting evidence on the material issue, requiring factfinding by a properly instructed jury. The defendant claims that the plaintiff admitted to repeatedly braking his vehicle immediately in front of McMahon's tractor-trailer, inviting the collision that occurred. The plaintiff denies saying any such thing. The plaintiff's stationhouse affidavit confirms the plaintiff's version of the events in question, yet even after having that written and sworn statement the defendant still

insisted not only on prosecuting the plaintiff for this serious offense but in causing him to be imprisoned under a bond which can only be called punitive when imposed upon a local resident with no criminal history who obviously was the victim of "road rage" by an out-of-state trucker.

The fact that the plaintiff was charged with one of the most serious motor vehicle offenses on the statute books, while the trucker, whom the plaintiff had informed the defendant had engaged in incredibly dangerous behavior which could have killed the plaintiff and other innocent motorists, was charged only with the most minor of infractions and sent on his way, demonstrates a shockingly disparate application of the law. For the plaintiff on these facts to have been charged with reckless driving and placed under a high bond, while the trucker was not, is an extreme example of the unequal application of the law. "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562, 120 S Ct. 1073, 1074-75 (2000).

"Before Olech, the Second Circuit permitted selective enforcement claims based on a 'class of one' if the plaintiff could 'show both (1) that [he was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent

to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Russo v. City of Hartford, 184 F. Supp. 2d 169, 190 (D. Conn. 2002) (Hall, J.), *citing* Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). "In Harlen, the Court of Appeals assumed without holding that a plaintiff who establishes differential treatment could state an equal protection claim by showing 'either that there was no rational basis for the unequal treatment received, or that the [unequal treatment] was motivated by animus." *Ibid.*, quoting Harlen, *supra,* at 500. *Cf.*, Barstow v. Shea, 196 F. Supp. 2d 141, 148 (D. Conn. 2002) (Arterton, J.); Oneto v. Town of Hamden, 169 F. Supp. 2d 72, 80-81 (D. Conn. 2001) (Arterton, J.); Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001); Carpenteria Valley Farms, Ltd. v. County of Santa Barbara, 334 F.3d 796, 802 (9th Cir. 2003).

The evidence in the present case, viewed in the light most favorable to the plaintiff's position, requires that the defendant's motion for summary judgment be denied in all respects.

Respectfully submitted:

JOHN R. WILLIAMS (ct00215)
Williams and Pattis, LLC
51 Elm Street
New Haven, CT 06510
203.562.9931
Fax: 203.776.9494
E-Mail: jrw@johnrwilliams.com
Plaintiff's Attorney

## CERTIFICATION OF SERVICE

On the date above stated, a copy hereof was mailed to Matthew B. Beizer, Esq., Assistant Attorney General, 110 Sherman Street, Hartford, CT 06105.

JOHN R. WILLIAMS