## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JEFFREY P. CHRISTMAN,                    :
      Plaintiff                    :        Civil Action No. 3:02CV1405(CFD)
                                    :
v.                                       :
                                      :
TROOPER KICK (#0811),                     :
      Defendant                    :

## RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Jeffrey Christman ("Christman"), brought this action under 42 U.S.C.

§1983 against the defendant, Connecticut State Police Trooper Christopher Kick, ("Trooper

Kick"), in his individual capacity, alleging three violations of the United States Constitution: (1)

false arrest in violation of the Fourth Amendment; (2) malicious prosecution in violation of the

Fourth Amendment; and (3) denial of the equal protection of the laws in violation of the

Fourteenth Amendment. Pending is Trooper Kick's Motion for Summary Judgment.  For the

following reasons, that motion is **GRANTED**.

**I**     **Background**[1]

On April 10, 2000, Christman was operating his Ford pickup truck westbound on

Interstate 95 near Bridgeport, Connecticut, when he was rear-ended by a tractor trailer truck

driven by Waymon J. McMahan of Alabama ("McMahan").[2]  After the collision, both vehicles

pulled off the highway and the Connecticut State Police were called.  Trooper Kick was the

---

[1]The facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs and other evidence submitted by the parties.  They are undisputed unless otherwise indicated.

[2]McMahan was not named a defendant in this action.

responding officer.  After arriving on the scene, Trooper Kick investigated the incident and

confirmed by physical evidence that McMahan's truck had struck the rear bumper of Christman's

vehicle.  As part of his investigation, Trooper Kick questioned Christman and McMahan, and

obtained written statements from both.

The statements of Christman and McMahan, attached to Trooper Kick's police report,

indicate two very different versions of the events leading up to the collision.  McMahan stated

that he was traveling in the center lane of the three-lane highway when Christman pulled up next

to him and "started playing games," including yelling and gesturing.  Christman then pulled in

front of McMahan and "kept slamming on his brakes."  When McMahan changed lanes, so did

Christman, who "kept braking" in front of McMahan's vehicle.  After trying to avoid Christman,

McMahan eventually struck him from behind.

Christman stated that he was driving in the left, high-speed, lane of the highway when

McMahan sped up from behind and began tailgating him.  Christman motioned to McMahan to

move to the center lane, "which after some time he eventually did."  McMahan then pulled up

alongside Christman, who rolled down his window and yelled, "third lane, no," apparently

because he believed that truckers were prohibited from that lane.  McMahan swore at Christman

in response, and then Christman moved into the center lane in front of McMahan, who again

began tailgating him.  Christman "tapped" his brakes twice.  Christman then moved into the right

lane to exit, and McMahan followed him, still tailgating, and Christman "tapped" his breaks

twice more.  Then McMahan struck the rear of Christman's Ford twice.  Christman motioned to

McMahan to exit the highway, and he initially refused, but then left the highway on exit 18.

After interviewing both defendants and reviewing the damage to the vehicles, Trooper

Kick issued an infraction to McMahan for following too closely for a commercial vehicle, in violation of Conn. Gen. Stat. § 14-240, and arrested Christman for reckless driving, in violation of Conn. Gen. Stat. § 14-222.  After his arrest, Christman was taken to the state police barracks, where he posted bond and was released.  On February 4, 2002, the Assistant State's Attorney nolled the charge against Christman.

Trooper Kick's police report indicates that he relied on the two statements in charging McMahan and Christman, the visible damage to Christman's Ford, and Christman's demeanor when he was being questioned: "Throughout . . . questioning [Christman] seemed very upset and at times uncooperative either refusing to answer questions, or only partially answering them."[3]

Trooper Kick has moved for summary judgment on the grounds that he had probable cause to arrest Christman, he is entitled to qualified immunity, and there is no basis for Christman's equal protection claim.

## II    Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 322,

---

[3]Trooper Kick, in his affidavit attached to his memorandum in support of his motion for summary judgment, restates his view of Christman's demeanor.  In his Local Rule 56(a)(2) statement, Christman disputes Trooper Kick's assessment of his demeanor, and states that the was cooperative.

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986 ) (quoting Fed. R. Civ. P. 5(c)); accord Miner v. Glen

Falls, 999 F.2d 655, 661 (2d Cir. 1993).  A dispute regarding a material fact is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Anderson, 477 U.S. at 248.

      Where, as in this case, the nonmoving party has the burden of proof at trial, the moving

party need only demonstrate that there is a lack of evidence to support the nonmovant's claim.

Celotex, 477 U.S. at 323-25; Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 95 (2d Cir.

1998).  Once the movant has established a prima facie case demonstrating the lack of a genuine

issue of material fact, the nonmoving party must provide enough evidence to support a jury

verdict in its favor.  Anderson, 477 U.S. at 248; Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.)

cert. denied, 502 U.S. 849 (1991).  A plaintiff may not rely on conclusory statements or mere

contentions that the evidence in support of summary judgment is not credible.  Ying Jing Gan v.

City of New York, 996 F.2d 522, 532 (2d Cir. 1993).  Similarly, a plaintiff, as the nonmovant,

may not rest "upon the mere allegations or denials" in its complaint to demonstrate the existence

of a genuine issue of material fact. Fed. R. Civ. P. 56(e).  Therefore, after discovery, if the

nonmoving party "has failed to make a sufficient showing on an essential element of [its] case

with respect to which [it] has the burden of proof," then summary judgment is appropriate.

Celotex, 477 U.S. at 323.  When addressing a motion for summary judgment, the Court resolves

"all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine

how a reasonable jury would decide."  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523

(2d Cir. 1992).  Thus, "[o]nly when reasonable minds could not differ as to the import of the

evidence is summary judgment proper."  Maffucci, 923 F.2d at 982.

III     **Discussion**

A) False Arrest Claim

Christman alleges that Trooper Kick violated the Fourth Amendment by arresting him on the charge of reckless driving without probable cause.  Kick contends that he had probable cause as a matter of law, and, even if he did not, he is entitled to qualified immunity.  Because the existence of probable cause is an absolute defense to a claim for false arrest, the Court will address that issue first. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) ( "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983."); Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d. Cir. 1995) (in a false arrest claim, a finding of probable cause subsumes the issue of qualified immunity).

1. Probable Cause

"To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff is required to show that 'the defendant intentionally confined him without his consent and without justification.'" Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (quoting Weyant, 101 F.3d at, 852).  Probable cause to arrest constitutes "justification," and, therefore, when an arresting officer has probable cause to arrest the plaintiff, there can be no cause of action for false arrest.[4]  Id;

---

[4]Whether probable cause existed is a question that may be resolved on a motion for summary judgment if there is no dispute of material fact regarding the pertinent events and knowledge of the officers. See Weyant, 101 F.3d at 852; Singer, 63 F.3d 110, 118-19 (2d Cir. 1995).  Although there are certainly disputes of fact here, as shown by the conflicting statements of Christman and McMahan, and Christman's denial of Trooper Kick's statement that Christman was being uncooperative when speaking with Kick at the scene of the accident, it is undisputed that Kick considered the two sworn statements and the damage to Christman's vehicle when he

Singer, 63 F.3d at 118-19. "Probable cause to arrest exists when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" Escalera, 361 F.3d at 743 (quoting Weyant, 101 F.3d at 852); see also, e.g., Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003) ("Probable cause to arrest should be determined based on what the officer knew at the time of the arrest.").  More specifically, "[w]hen information is received from a putative victim or an eyewitness, probable cause exists . . . unless the circumstances raise doubt as to the person's veracity."  Curley v. Village of Suffren, 268 F.3d 65, 70 (2d Cir. 2001) (internal citation omitted); accord Loria v. Gorman, 306 F.3d 1271, 1289-90 (2d Cir. 2002); Fulton v. Robinson, 289 F.3d 188, 195 (2d. Cir. 2002); Lee v. Sandberg, 136 F.3d 94, 103 (2d Cir. 1997);  Singer, 63 F.3d at 119; Thomas v. County of Putnam, 262 F.Supp.2d 241, 246 (D.Conn. 2003); Donovan v. Briggs, 250 F.Supp.2d 242, 251 (W.D.N.Y. 2003).[5]  This is because the law does "not impose a duty on an arresting

---

made his determinations as to probable cause.  He also took the statements from McMahan and Christman himself.  Because Christman's demeanor is disputed, however, the Court will not consider that as an undisputed fact.

   [5]See also  McKinney v. George, 726 F.2d 1183, 1187 (7th Cir. 1984) ("If policemen arrest a person on the basis of a private citizen's complaint that if true would justify the arrest, and they reasonably believe it is true, they cannot be held liable for a violation of the Constitution merely because it later turns out that the complaint was unfounded."); State v. Amarillo, 198 Conn. 285, 310, 503 A.2d 146, 161 (1986) ("It is generally agreed . . . that a comparable showing [of reliability] is not needed to establish veracity when the information comes from an average citizen who is in a position to supply information by virtue of having been a crime victim." (citation and internal quotation marks omitted; alterations in original)); Miloslavsky v. AES Eng'ring Soc'y, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) ("The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed."), aff'd, 993 F.2d 1534 (2d Cir. 1993), cert. denied, 510 U.S. 817, 126 L. Ed. 2d 37, 114 S. Ct. 68 (1993).

officer to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims . . . before making an arrest." Jocks, 316 F.3d at 135; see also Ricciuti v. N.Y. City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) (rejecting argument that the police were obligated to investigate the defendant's claim of self-defense before arresting him). As the Second Circuit has emphasized on numerous occasions, a police officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Caldarola v. Calabrese, 298 F.3d 156, 168 (2d Cir. 2002); Coons v. Casabella, 284 F.3d 437, 441 (2d Cir. 2002); Martinez v. Simonetti, 202 F.3d 625, 635 (2d Cir. 2000); Ricciuti, 124 F.3d at 128; see also Baker v. McCollan, 443 U.S. 137, 145-46, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (A police officer is not required "to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as a lack of requisite intent.").

The Second Circuit's decision in Singer is particularly helpful in considering Kick's motion for summary judgment here, and assessing whether Kick had probable cause to arrest Christman based on the undisputed facts. In that case, plaintiff Singer was a ranger with the New York State Department of Environmental Conservation, and he received a call to join a search party for a missing hunter. En route, he entered a convenience store, picked out several packages of luncheon meat and a loaf of bread for the search party and walked out of the store without paying for these items. Singer told the store clerk, who was busy with other customers, that he was a member of the search party and that he would be back later to pay for the food. Singer claimed the store clerk consented; the store clerk later denied consenting. The local police were then called and the store clerk signed a criminal information and a supporting deposition reciting his version of the incident. The police officer then went to Singer's home, and, after hearing

7

Singer's version of the incident, arrested Singer for larceny.  After the criminal charge against

Singer was dismissed "in the interest of justice," Singer brought an action against various

individuals, including the police officer, alleging false arrest and malicious prosecution under 42

U.S.C. § 1983, conspiracy to violate his civil rights, and malicious prosecution under state

common law. Singer, 63 F.3d at 112-13.  The district court granted summary judgment on the

false arrest claim, finding that the police officer had probable cause as a matter of law.  The

Second Circuit affirmed, holding that the information provided by the store clerk, the purported

victim, was sufficient to provide probable cause, even though Singer disputed the clerk's

depiction of the events: "An arresting officer advised of a crime by a person who claims to be the

victim, and who has signed a complaint or information charging someone with the crime, has

probable cause to effect an arrest absent circumstances that raise doubts as to the victim's

veracity." id at 119 (citing Hebron v. Touhy, 18 F.3d 421, 422-423 (7th Cir. 1994) and

Miloslavsky v. AES Engineering Soc., Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992)).

In the instant case, Christman was charged with reckless driving under Conn. Gen. Stat. §

14-222(a), which provides in relevant part: "No person shall operate any motor vehicle upon any

public highway of the state . . . recklessly, having regard to the width, traffic and use of such

highway, road, school property or parking area, the intersection of streets and the weather

conditions."  It is "reckless indifference to the safety of others which supplies the criminal intent

necessary to warrant conviction." State v. Sandro O., 51 Conn. App. 463, 467, 724 A.2d 1127,

1129 (1999) (quoting State v. Camera, 132 Conn. 247, 251, 43 A.2d 664 (1945)).  Recklessness

requires "a conscious choice of a course of action, either with knowledge of the serious danger to

others involved in it, or with knowledge of facts which would disclose such danger to any

reasonable man." <u>Mooney v. Wabrek</u>, 129 Conn. 302, 308, 27 A.2d 631 (1942) (internal

quotation marks omitted).  McMahan's statement provided that Christman had "started playing

games" with him, including yelling and gesturing at him while driving, purposefully pulled his

Ford in front of the tractor trailer and repeatedly applied his brakes while in front of the tractor

trailer, causing the collision between the vehicles.  Christman admitted in his own statement that

he tapped his brakes at two different times when he claimed that McMahan was tailgating him.

The "circumstances" that Trooper Kick found at the scene, including the physical damage to the

vehicles, failed to cast "doubt as to [McMahan's] veracity." <u>Curley</u>, 268 F.3d at 70 (officer had

probable cause because the circumstances at the scene buttressed, rather than discredited, the

statements from the two purported victims).  Put another way, based on the two sworn

statements, it was reasonable for Trooper Kick to believe that Christman had knowledge that

braking in front of McMahan's truck, after engaging in a verbal dispute with McMahan while

driving, would be dangerous to him, McMahan and other individuals driving on the highway.

 The principal difference between the undisputed facts here and in <u>Singer</u> is that, although

Trooper Kick had sworn statements from both Christman and McMahan, they differed in

material ways as to whether Christman had engaged in reckless driving, and both parties were

exposed to charges depending on how Kick assessed their credibility.  Although the clerk in

<u>Singer</u> faced some possible repercussions if he had lied to the investigating officer,[6]  he was not

---

  [6]Similarly, both Christman and McMahan faced penalties if they lied in their statements
to Trooper Kick.  The Connecticut statute governing the making of false statements provides:

  "A person is guilty of false statement in the second degree when he intentionally
  makes a false written statement under oath or pursuant to a form bearing notice,
  authorized by law, to the effect that false statements made therein are punishable,
  which he does not believe to be true and which statement is intended to mislead a

faced with charges concerning his activities at the store. This distinction is not meaningful, however, because it would seem that a police officer may chose to rely on either of two conflicting sworn statements in determining probable cause, especially when he personally took the statements and was thus able to assess the credibility of the two victims/perpetrators, there was some uncontroverted evidence that supported one of the statements (here that Christman purposely had tapped his brakes twice while in front of McMahan), and there was no other evidence that raised questions as to the veracity of the statement upon which he relied.[7] Although Christman disputes Trooper Kick's observation that he was not acting truthfully when he gave his statement, police officers must be given some latitude in assessing credibility as part of determining probable cause.  Therefore, Trooper Kick had probable cause to arrest Christman for reckless driving. See Thomas, 262 F.Supp.2d at 247 (granting summary judgment because

---

    public servant in the performance of his official function."

Conn. Gen. Stat. § 53a-157b (a).  Because a violation of that section constitutes a class A misdemeanor, an individual making such a false statement may be subject to a term of imprisonment not to exceed one year. See Conn. Gen. Stat. § 53a-36.  The form on which Christman and McMahan provided their statement to Trooper Kick "bear[s] notice, authorized by law, to the effect that false statements made therein are punishable."  Consequently, both signed their statements with that knowledge. See Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (the reliability of the tip personally given to the police officer was increased because, "under Connecticut law, the informant might have been subject to immediate arrest for making a false complaint had [the officer's] investigation proved the tip incorrect."); State v. Brazzell, 38 Conn.Supp. 695, 697, 460 A.2d 1306 (Conn. App. Div. 1983) (affirming conviction under prior version of § 53a-157b when defendant deliberately made a false statement in a signed statement to the police).

    [7]There may have been some motivation for McMahan to recount the facts more favorably to himself.  In Singer, however, there was also a question as to the clerk's motivation. See Singer, 63 F.3d at 25.  The Second Circuit stated that "motivation is not a consideration in assessing probable cause." Id at 25-26.  That may not be true in all circumstances, but certainly a police officer should be able to rely on a victim's statement in the absence of clearer evidence creating "doubts as to the victim's veracity," and when the officer took the statement himself.  Id.

officer had probable cause due to "sworn statement of the victim" and the victim's daughter).

     2. Qualified Immunity

Even assuming probable cause to arrest Christman was not present, Trooper Kick is protected by qualified immunity. See 1B Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation: Claims, Defenses, and Fees (3d ed. 1997) §9.28, p. 458 (It is possible that "a warrantless [arrest] could be unreasonable and thus unconstitutional for Fourth Amendment purposes, but objectively reasonable for the purpose of . . . qualified immunity."); Oliveria v. Mayer, 23 F.3d 642, 648 (2d Cir. 1994) (noting the "seeming circularity" of the qualified immunity test).

As a general matter, "[t]he qualified immunity defense is intended to strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority. The qualified immunity doctrine protects government officials from civil liability in the performance of discretionary functions as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Lee v. Sandberg, 136 F.3d 94, 100 (2d Cir. 1997) (internal citations and quotation marks omitted). As the United States Supreme Court has stated, qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

More specifically, a police officer is entitled to qualified immunity from liability for his discretionary actions if either (1) his "conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known," Harlow v. Fitzgerald, 457

U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), or (2) it was " 'objectively reasonable' for

him to believe that his actions were lawful at the time of the challenged act." Lennon v. Miller,

66 F.3d 416, 420 (2d Cir.1995) (citing Anderson, 483 U.S. at 641).  Accord Moore, 371 F.3d at

114 (noting two ways for officer to have qualified immunity); Cerrone, 246 F.3d at 199 (same);

Lee, 136 F.3d at 101 (same).  Each of those two tests will be considered below.

i) Clearly Established Constitutional Right

"A court required to rule upon the qualified immunity issue [first] must consider . . . this

threshold question: Taken in the light most favorable to the party asserting the injury, do the facts

alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S.

194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). As a general matter, "[t]he right not to be

arrested or prosecuted without probable cause has, of course, long been a clearly established

constitutional right." Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991), cert.

denied, 505 U.S. 1221 (1992); see also  Carroll v. United States, 267 U.S. 132, 69 L. Ed. 543, 45

S. Ct. 280 (1925) (recognizing constitutional right not to be arrested or prosecuted without

probable cause).

When considering a question of qualified immunity, however, a district court must

determine whether, given the "specific context of the case," the right was clearly established.

Saucier, 533 U.S. at 201.  That is to say, "[t]he contours of the right must be sufficiently clear

that a reasonable official would understand that what he is doing violates that right."  Anderson,

483 U.S. at 640; see also Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818

(1999) ("[A]s we explained in Anderson, the right allegedly violated must be defined at the

12

appropriate level of specificity before a court can determine if it was clearly established"). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." Moore v. Vega, 371 F.3d 110, 115 (2d Cir. 2003). Trooper Kick based his decision to arrest Christman on conflicting sworn statements from Christman and McMahan, which he took himself. Therefore, the question is whether it was clearly established either by the Supreme Court or the Second Circuit that a police officer lacks probable cause to make an arrest based on two conflicting statements by possible victims/perpetrators when the officer took the statements himself, and one of the statements, although generally inconsistent with the other, supports it in part. The Court finds that Christman did not have such a clearly established right at the time of his arrest. To the contrary, the Court finds that, at that time, it was clearly established in the Second Circuit that a victim's sworn statement to the police provides probable cause for the alleged perpetrator's arrest, absent circumstances that would raise doubts about the purported victim's veracity. See, e.g., Lee, 136 F.3d at 103; Singer, 63 F.3d at 119. A fair reading of these cases extends that protection of the officer to Trooper Kick here. Therefore, although Christman has a general right to be free from arrest absent probable cause, he did not have a clearly established right not to be arrested under the circumstances found in this case.[8]

ii) Objectively Reasonable

---

[8]The nature of the offense would also seem to be relevant in testing probable cause. For example, Trooper Kick had little opportunity for corroborating either Christman's or McMahan's statements, given the circumstances. No other drivers were able to be contacted, and no other physical evidence was readily available. Other types of crimes could yield more corroboration and, although the test for probable cause is constant, the type of the offense and nature of the investigation could yield more information relevant to that determination.

13

The second way in which government officials will be protected by qualified immunity is if they can establish that it was objectively reasonable for them to believe their actions were lawful at the time.  Vega, 371 F.3d at 114; Cerrone v. Brown, 246 F.3d 194, 199 (2d Cir. 2001). That is to say, government officials enjoy immunity from liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson, 483 U.S. at 638; see also Castro v. United States, 34 F.3d 106, 112 (2d Cir.1994).  In the absence of a material factual dispute, the question of whether it was objectively reasonable for the officers to believe that they did not violate the plaintiff's rights is a purely legal determination for the court to make.  Lennon v. Miller, 66 F.3d 416, 422 (2d Cir. 1995); Oliveira, 23 F.3d at 649; see also In re State Police Litigation, 88 F.3d 111, 123 (2d Cir. 1996) (summary judgment should be granted if "no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right.").

When addressing whether an officer has qualified immunity for an arrest without probable cause under the objectively reasonable analysis, the Second Circuit instructs district courts to determine whether the officer had "arguable probable cause":

> Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law.  It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials -- like other officials who act in ways they reasonably believe to be lawful - should not be held personally liable.  Even on summary judgment, where all facts must be viewed in the light most favorable to the non-moving party, for the purpose of qualified immunity and arguable probable cause, police officers are entitled to draw reasonable inferences from the facts they possess at the time of a [arrest] based upon their own experiences.

Cerrone, 246 F.3d at 203 (internal citations and quotation marks omitted); see e.g., Coons, 284

F.3d at 441-42 (granting summary judgment because officer had "arguable probable cause").

      Given all of the evidence observed by Trooper Kick at the scene; Cerrone, 246 F.3d at

203; it was objectively reasonable for Trooper Kick to determine that he was not violating

Christman's right to be free from arrest without probable cause when he charged him with a

violation of § 14-222.  See, e.g., Mehon v. Frinton, 170 F.Supp.2d 190, 196 (D.Conn. 2001)

(granting officer summary judgment as to false arrest and malicious prosecution claims because

in "both accidents, [the officer's] conclusions were based on his analysis of the facts as he

observed them at the scene, including the damage to each vehicle and the statements of both

drivers.").  It was objectively reasonable for Trooper Kick to believe that he had probable cause

to arrest Christman for reckless driving and cite McMahan for following too closely based on the

undisputed facts he possessed at the time he made his decisions as to probable cause.  Again,

Christman's actual demeanor is a disputed fact, so it can not be part of this analysis.  However,

based on Kick's observation of the damage to the vehicles, the two statements themselves and

that fact that Kick himself took those statements, a reasonable police officer in Kick's position

had sufficient information to find probable cause as to Christman's charge.  It is undisputed that

the physical damage indicates a rear end collision, and that Christman on two occasions

repeatedly tapped his brake lights.  It also was reasonable for an officer to credit more of

McMahan's statement than Christman's as to the circumstances leading up to the collision when

he personally observed the two people involved after the accident, took their statements after the

accident, and made decisions about their credibility.  Even if Kick was incorrect about whether

Christman was telling the truth, police officers responding to a crime scene or a motor vehicle

accident must be given some latitude in sizing up witnesses, victims and perpetrators about whether they are telling the truth.

Accordingly, the Court grants Trooper Kick summary judgment on Christman's false arrest claim.[9]

_____

[9]There is some confusion about the claims Christman has asserted in his complaint. As mentioned in the text above, the Court views the complaint as alleging claims for false arrest, malicious prosecution and denial of equal protection.. The parties' Rule 26(f) report states, in the plaintiff's description of the case, that this action involves these claims. [See Doc. #9] The parties' joint status report, however, describes the case as involving only a false arrest claim and an equal protection claim. [See Doc. #14]. Similarly, Trooper Kick's Motion for Summary Judgment describes Christman's complaint as setting forth only a false arrest claim and an equal protection claim, and his arguments only address those two claims. [See Doc. #15] The Court concludes that the complaint may also set forth a claim for malicious prosecution, but it is not addressed by Trooper Kick's motion for summary judgment.

This Court retains the power, however, to enter summary judgment on the malicious prosecution claim sua sponte. See Pugh v. Goord, 345 F.3d 121, 124-25 (2d Cir. 2003) (explaining power of district court to enter summary judgment sua sponte). "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law." Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002). To sustain a malicious prosecution claim under Connecticut law, a plaintiff must prove the following elements: (1) the defendants initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) *the defendant acted without probable cause*; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice. McHale v. W.B.S. Corporation, 187 Conn. 444, 447, 446 A.2d 815 (1982). "The existence of probable cause is an absolute protection, and what facts, and whether particular facts, constitute probable cause is always a question of law." Vandersluis v. Weil, 176 Conn. 353, 356, 407 A.2d 982 (1978); accord Ancona v. Manafort Bros., 56 Conn.App. 701, 708, 746 A.2d 184 (2000); Norse Systems, Inc. v. Tingley Systems, Inc., 49 Conn.App. 582, 593-94, 715 A.2d 807 (1998). Because the Court has found that Trooper Kick had probable cause to arrest Christman, it follows that he also had probable cause to initiate the prosecution of Christman for reckless driving. Even if he lacked probable cause, however, the Court would find that, for the same reasons outlined in the text, that Trooper Kick enjoys qualified immunity from this claim. See, e.g., Mehon v. Frinton, 170 F.Supp.2d 190, (D.Conn. 2001) (because the officer had probable cause to issue the summons, he had qualified immunity to claims for false arrest and malicious prosecution). Consequently, to the extent that Christman has not already abandoned his malicious prosecution claim, the Court finds that Trooper Kick is entitled to summary judgment on that claim also.

B) Equal Protection Claim

Christman's complaint also alleges that he was denied the equal protection of the laws under the Fourteenth Amendment. In his motion for summary judgment, Trooper Kick contends that Christman has failed to produce evidence that would invoke its protections here.

The Equal Protection Clause of the Fourteenth Amendment directs that "all persons similarly situated . . . be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citation omitted). Christman does not claim that he is part of a protected class of persons, but rather that he was selectively prosecuted for a more serious offense and thus discriminated against by Trooper Kick in that way. "In order to establish a violation of equal protection based on selective enforcement, the plaintiff must ordinarily show (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations," such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. LaTrieste Restaurant and Cabaret, 188 F.3d 65, 69 (2d Cir. 1999); accord Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 16 (2d Cir. 1999); Murphy v. Zoning Com'n of Town of New Milford, 289 F.Supp.2d 87, 111 (D.Conn. 2003).[10]

_____

[10]It unclear whether this standard still applies in the Second Circuit. In Village of Willowbrook v. Olrech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), the United States Supreme Court concluded that an equal protection claim premised on a "class of one" may lie "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." See Hayut v. State University of New York, 352 F.3d 733, 754 (2d Cir. 2003) (declining to resolve whether "Olrech changed this Circuit's requirement that a 'class of one' plaintiff alleging an equal-protection violation show an illicit motivation"); DeMuria v. Hawkes, 328 F.3d 704, 707 n.2 (2d Cir. 2003) (same); see also African Trade & Info. Ctr. v. Abromaitis, 294 F.3d 355, 363-64 (2d Cir. 2002) (distinguishing between selective prosecution equal protection claim and Olrech-based equal protection claim); Murphy v. Zoning Com'n of Town of New Milford, 289

Trooper Kick contends that Christman has failed to identify any other individuals that are "similarly situated," and, therefore, he is entitled to judgment as a matter of law.[11]  Moreover, even if Christman could identify similarly situated individuals (for example McMahan), and was able to demonstrate that he was treated selectively, Trooper Kick contends that Christman cannot point to any evidence that their disparate treatment was due to an impermissible consideration, such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or a malicious or bad faith intent to injure Christman.  LaTrieste Restaurant, 188 F.3d at 69.

---

F.Supp.2d at 111 (applying only the illicit motivation test).  Although Christman notes the tension in the Second Circuit between standards for selective prosecution claims and Olrech-based claims in his memorandum in opposition to summary judgment, he does not state which is applicable to his equal protection claim. Compare Brown v. Regional School Dist. 13, 328 F.Supp.2d 289, 294 n.1 (D.Conn. 2004) ("Plaintiff here has explicitly styled her claim as an Olrech claim based on a lack of rational basis for the difference in treatment."). In his complaint, however, Christman alleges that in charging him and McMahan with disparate offenses, Trooper Kick "intentionally and maliciously discriminated against the plaintiff . . . and thereby deprived the plaintiff of equal protection of laws . . . ."  Based on this language, the Court concludes that Christman has set forth a selective prosecution equal protection claim, rather than a Olrech-based equal protection claim.  As noted in the text of this ruling, the Court finds that Christman has failed to present evidence supporting a proper equal protection claim under the illicit motivation formulation, and, therefore, Trooper Kick is entitled to summary judgment.

If the Olrech "rational basis" test were to apply, however, the Court still would grant summary judgment to Trooper Kick.  To survive summary judgment under the Olrech standard, a "class of one" claimant must present evidence that any differential treatment was intentional, irrational, and wholly arbitrary.  See African Trade & Info. Ctr., 294 F.3d at 363-64; Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001). The Court concludes, given the undisputed facts recited, and the lack of evidence presented by Christman, that Trooper Kick's decision to charge Christman with reckless driving, and McMahan with following too closely, was not "intentional, irrational, and wholly arbitrary."  See Giordano, 274 F.3d at 751; see also Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 500 (2d Cir. 2001) (a government body acts irrationally only when it acts "with no legitimate reason for its decision."); Brown v. Regional School Dist. 13, 328 F.Supp.2d at 294 ("The rational basis standard is properly low").

[11]Although the general rule is that whether two individuals are similarly situated is a factual issue that should be left to a jury, "[t]his rule is not absolute . . . and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." Harlen Assoc., 273 F.3d at 499 n.2.

Christman concedes that both parties to the incident were caucasian males, and he has not presented any evidence that his disparate treatment was the result of any impermissible consideration or malicious or bad faith intent to injure.  As Trooper Kick correctly notes, Christman's only argument in support of his equal protection claim is that McMahan was charged with violating a different, and less severe, statute.[12]  Disparate treatment by itself, not resulting from an impermissible consideration or malicious or bad faith intent to injure, is an insufficient basis for an equal protection claim.  See LaTrieste Restaurant, 188 F.3d at 69.  Consequently, the Court concludes that Christman has not sufficiently challenged Trooper Kick's motion for summary judgment as to this claim.  See Anderson, 477 U.S. at 248 (Once the movant has established a prima facie case demonstrating the lack of a genuine issue of material fact, the nonmoving party must provide enough evidence to support a jury verdict in its favor).

For the foregoing reasons, the motion for summary judgment **[Doc. #15]** is **GRANTED**.

SO ORDERED this 28th day of October 2004, at Hartford, Connecticut.

_____/s/ CFD_____
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**

---

[12]McMahan was charged with following too closely under Conn. Gen. Stat. § 14-220, which provides, in subsection (d), that: "Violation of any of the provisions of this section shall be an infraction, provided any person operating a commercial vehicle combination in violation of any such provision shall have committed a violation and shall be fined not less than one hundred dollars nor more than one hundred fifty dollars."

19